UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

BRONCO HAZELTON CO., HAZELTON )
MINING, LLC, HAZELTON WASH )
PLANT, LLC, and WHITE RIVER COAL, )
INC., )
       Plaintiffs, )
        )
   vs. )   3:09-cv-132-RLY-WGH
        )
BRYCE DOWNEY & LENKOV LLC, f/k/a )
BRYCE DOWNEY LLC, )
       Defendant. )

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

This lawsuit arises out of the sale of three related coal mining entities and is brought against the Defendant law firm, Bryce, Downey & Lenkov, LLC ("BDL") which provided legal services and advice during the course of the sale transaction. The Plaintiffs in this matter are the three entities which were purchased, Hazelton Mining, LLC ("HM"), Hazelton Wash Plant, LLC ("HWP") and White River Coal, Inc. ("WRC")(hereinafter collectively the "Targets"), along with the purchasing company, Bronco Hazelton Co. ("Bronco"). It is alleged that BDL, which has its offices in Chicago, Illinois, represented the Targets in connection with the sale, breached its duties to the Targets, conspired to defraud Bronco and one of the Targets and violated the Indiana Attorney Deceit Statute. BDL has filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which this entry will address.

**I. Dismissal Standard**

Pursuant to Rule 12(b)(6), a complaint may be dismissed if the plaintiff fails to state a claim upon which relief may be granted. The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, the plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ––– U.S. –––, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting Twombly, 550 U.S. at 557). Rather, "a complaint must contain sufficient factual matter ... to 'state a claim for relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.*

## II. Factual Allegations

In 2005, HM owned the Hazelton Coal Mine in Hazelton, Indiana. WRC operated that coal mine and HWP owned the facility responsible for washing the coal coming from that mine. The ownership of these three companies was split between: Blankenberger Brothers Holdings, LLC; Hoosier King Coal Company; Black Rush Mining LLC; Donald Blankenbeger; David Blankenberger; Patrick Blankenberger and Rick Blankenberger (collectively hereinafter the "Sellers"). In early 2005, the Targets were losing money and having difficulty meeting day to day expenses. At that time, an affiliate of Bronco engaged John Brandt, a representative of the Targets, in discussions about the possibility of acquiring the three companies. After those initial discussions, BDL began working on the sale of the equity interests in the Targets on behalf of both the Targets and the Sellers. BDL billed HM for its services, but the bills were paid by WRC.

On July 1, 2005, Bronco entered into an acquisition agreement with the Targets and Sellers for the purchase of 100% of the equity ownership interests for $25,000,000. The deal closed on December 29, 2005, and, in compliance with the terms of the acquisition agreement, BDL provided an opinion letter to Bronco's Board of Directors confirming, as corporate counsel to the companies, the validity and authority of each of

3

the three Targets to consummate the transaction and to continue operating its business. The three opinion letters all state that BDL considered and examined the books and records of each company in reaching its opinion. Plaintiffs allege that if BDL reviewed the books and records of the Targets it knew that they were insolvent and should have known (according to Plaintiff's unsupported legal conclusion) that the corporate form could no longer shield the directors and control persons from personal liability for further indebtedness.

After the equity sale, Bronco and the Targets continued to have problems paying their bills and debts as they became due. Eventually, Bronco and the Targets filed for bankruptcy under Chapter 11. On May 23, 2008, in connection with related litigation and based upon the deposition testimony of Geoffrey Bryce, a principal of BDL, the Targets wrote to BDL, as their former corporate counsel, to arrange for a review of files and a discussion of events related to the acquisition agreement. BDL declined the request, stating in a letter dated May 27, 2008, that it had represented the Sellers and not the Targets in connection with the acquisition. Subsequent similar requests from the Targets continued to be denied. This resulted in the Targets filing an adversary proceeding in bankruptcy court to establish that BDL had acted as their legal counsel and to obtain the documents and information they were seeking from BDL.

In defense of the adversary proceeding, BDL, and specifically Geoffrey Bryce, maintained that despite the language of certain correspondence and the prior testimony

given by Bryce, Bryce and BDL had always understood that BDL was representing the Sellers and not the Targets. Bryce claimed to have never met with anyone from the Targets other than the Sellers. Nevertheless, the bankruptcy court ruled conclusively that BDL's actions rose to the level of representation of the Targets. Consequently, the Targets and Bronco filed this lawsuit seeking damages from BDL.

Count One of this lawsuit addresses the legal fees paid by WRC in connection with the acquisition. WRC alleges that despite the fact that BDL was supposed to be representing both the Sellers and the Targets, it preferred the interests of the Sellers, performed no work for the benefit of WRC and joined the Sellers in a scheme to have WRC pay for the entirety of the legal bills associated with the acquisition. WRC seeks return of the $174,459.48 in legal fees which were paid to BDL.

Count Two of the Complaint asserts a breach of fiduciary duty on the part of BDL in connection with its refusal to provide its files and other information to the Targets, when the files were sought in May of 2008. Count Two seeks damages in the amount of $119,000 in legal fees and expenses the Targets were forced to incur in pursuing the adversary proceeding against BDL.

Count Three is pursued by Bronco and seeks damages in excess of $25,000,000.00, representing the amount that Bronco spent to purchase the equity of the Targets. Bronco alleges it would never have paid the twenty-five million dollars if it had

5

known that BDL did not consider itself to be legal counsel for the Targets; or, if it had known that the Targets were insolvent, as Plaintiffs allege the BDL knew at the time. Bronco further alleges that BDL acted with the intent to deceive Bronco and induce it to rely on the representations made by BDL in its opinion letters, such as the representation that the Targets were validly existing with the corporate power to carry on its business.

The final count, Count Four, is a claim that BDL violated Indiana's Attorney Deceit Statute, Indiana Code § 33-43-1-8. Plaintiffs seeks treble damages pursuant to that statute, as well as legal fees.

## III.  Discussion

BDL argues that Count One should be dismissed because it fails to meet the plausibility standard announced in *Twombly* and also fails to provide the specificity required by Federal Rule of Civil Procedure 9(d), which states that:

> (d) **Fraud or mistake; conditions of mind.**  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The court is not persuaded by BDL's argument with respect to Count One.  It is certainly plausible, given the apparent conflicting testimony of Geoffrey Bryce, that Bryce and BDL focused on assisting Sellers, including having their legal fees paid by WRC, despite never intending to represent WRC or any of the Targets.  Further,

paragraphs 10, 11, 21, 22 and 23 of the Complaint more than adequately set out the specificity of circumstance, or the who, what, where, when and how required by Fed.R.Civ.P. 9(b) to show that a sufficient pretrial investigation has been conducted to warrant further exploration and pursuit of the claim.  *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  Accordingly, Count One will not be dismissed.

Count Two of the Complaint alleges breach of a fiduciary duty.  BDL argues that Plaintiffs' Complaint has failed to identify any fiduciary duty recognized by law and that its conduct has not breached any duty it may have owed to the Targets.  The Targets' allegations in Count Two are relatively simple:  We were represented by BDL, paid for its services (at least one of the three did) and, pursuant to its duty of loyalty to its clients, BDL had an obligation to honor its clients' request for files associated with that representation.

Indeed, as a matter of either Indiana or Illinois law[1], attorneys occupy a fiduciary role in their relationship with clients and owe them fiduciary duties.  *Sanders v.*

---

[1] It is unclear from the allegations in the pleadings and the documents submitted in connection with either the Complaint or the Motion to Dismiss, whether the relationship between the Plaintiffs (or the Sellers) and BDL was centered in Indiana, or Illinois.  Despite the fact that all three of the Targets were Indiana corporations with operations in Indiana, each lists Elmhurst, Illinois as their principal place of business.  Because BDL operates out of Chicago, it seems likely that the relationship was centered in Illinois, but the answer to the question is not crucial for purposes of deciding the Motion to Dismiss as the result would not change under either state's interpretation of substantive law and Plaintiffs have never challenged Defendant's assertion that Indiana law applies in this case.

*Townsend,* 582 N.E.2d 355, 358 (Ind. 1991); *McFail v. Braden,* 166 N.E.2d 46, 51 (Ill. 1960).  BDL argues that this was a mere discovery dispute between lawyers and can not rightfully be escalated to a breach of a lawyer's fiduciary duty to clients.  But that is not at all what Count Two is about.  It is not an attempt to obtain documents through discovery, it is an attempt to obtain damages for the refusal of an attorney to cooperate with his client's need to view or copy documents associated with that attorney's representation of that client.  Client and counsel are not supposed to be adversaries and a client should not be made to go through some type of discovery process to obtain information regarding the legal representation provided to it.

BDL explains the circumstances that surrounded its response to the Targets' request for their legal files and for discussions with or interviews of attorneys regarding prior representation in its letter of May 28, 2008, stating that it had not represented the Targets "***per se***" in connection with the acquisition and that most of what the Targets desired from BDL had been released previously in connection with a subpoena issued in the course of the Plaintiffs' bankruptcy proceedings.  Setting aside, for the moment, the intentional vagueness associated with telling a company it was not being represented "per se," the bankruptcy court found that BDL represented the Targets and this court agrees.  A law firm which sends out opinion letters claiming the letters to be in compliance with an agreement which requires such opinion letters to be provided by corporate counsel, is confirming its corporate representation when it does so.  Count Two states a plausible

claim of breach of fiduciary duty against BDL.

Count Three is the "big money" claim, as it seeks to recover the $25,000,000.00 paid by Bronco for the Targets. It is alleged that BDL engaged in constructive fraud by representing to Bronco that the Targets validly existed with all corporate power and authority to continue conducting business. According to Bronco, this mislead it into believing the Targets were solvent when they were not. However, this claim is implausible for more than one reason.

First, the opinion letters are not misleading. Plaintiffs offer no authority and the court finds none to support a conclusion that insolvency destroys the legal ability of a company to continue conducting business as it is at that moment.[2] Furthermore, as BDL points out in its reply brief, the letter specifically references that it is issued consistent with the terms of the Accord adopted by the American Bar Association in 1991, which Accord indicates that the letter cannot be relied upon for any legal analysis other than what is specifically included. Whether or not the Targets were solvent was not an opinion offered in the letter and the insolvency exception in the letter and the Accord must be read

---

[2]Tangentially, Bronco also never explains its legal basis for asserting that the corporate form, and any inherent protection it affords directors and principals, disappears upon a determination that the corporation is insolvent. The Indiana cases cited in Plaintiffs' response brief merely confirm that a corporation or limited liability company may have their protections pierced under certain circumstances. *See Longhi v. Mazoni,* 914 N.E.2d 834, 839 (Ind.App. 2009); *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 504 (Ind.App. 2007). The circumstances of those cases do not hold any similarity to the circumstances complained of here.

to prevent any reliance by Bronco on the letter as a hedge against the insolvency of any of the Targets.

Finally, the elements of constructive fraud include the existence of a duty based upon the relationship between the parties and an advantage gained by the party to be charged.[3] *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind.App. 1994). BDL did not gain any advantage here and, most importantly, stood in no type of relationship with Bronco which would establish a duty to do anything other than what it did, which was to provide the opinion letter in conformance with the terms of the acquisition agreement. In short, if Bronco wanted an assurance of the solvency of the companies it should have established terms in the acquisition documents that would have required BDL or, more likely, an accounting firm to provide such assurance. Count Three will be dismissed.

That leaves Count Four, which asserts a violation of the Indiana Attorney Deceit Statute. BDL maintains that the Attorney Deceit Statute does not create a separate cause of action and that Count Four fails to adequately plead a claim of common law deceit. As to the former, BDL is correct; Indiana Code § 33-43-1-8 does not create a separate cause of action. *Anderson v. Anderson,* 399 N.E.2d 391, 403 (Ind.App. 1979)(finding no new cause of action created by previous codification of the same statute at Indiana Code § 34-

---

[3]Both parties argue the constructive fraud issue relying on Indiana case law and, as noted previously, Plaintiffs never challenged the assertion in Defendant's brief that Indiana law applies to all claims.

1-60-1).  A plaintiff must prove a case of deceit or collusion against the attorney and establish that the attorney intended to deceive a court, judge or party to an action; if successful, the plaintiff's damages are trebled by the dictate of the statute.  *Id*.

The question left to answer is whether a claim for deceit is adequately pled by the Complaint in this lawsuit.  Plaintiffs argue that it is enough that they have alleged that BDL, through the testimony of Geoffrey Bryce, has made misrepresentations to the court by stating in one proceeding that it had represented the Targets and by stating in another related proceeding that it had not represented the Targets.  The legal elements of a common law deceit claim in Indiana are: 1) an untrue representation of fact, 2) known to be untrue or recklessly made by the party making it,  3) made for the purpose of inducing another party's reliance thereupon, and 4) actual inducement of such reliance to the detriment of that other party.  *Conner v. Howe*, 344 F.Supp.2d 1164, 1173-1174 (S.D.Ind. 2004).

The court acknowledges that Mr. Bryce's statement, during the course of the trial of an adversary action related to the Targets' bankruptcy proceedings, that BDL had not represented the Targets in any capacity, is sufficient to satisfy the first three elements, since Fed.R.Civ.P. 9(b) excepts intent or state of mind from its specificity requirements for pleadings.  However, Plaintiffs would still need to plead and prove the final element of deceit, their reliance on Bryce's statement to their detriment.  Not only is such an allegation lacking, but the circumstances suggest it could never be proven.  Bronco

11

alleges that it was its reliance on the statements made in the opinion letters which occasioned its damages, not any reliance on what Bryce may have said in a deposition. Neither were the Targets induced to rely on any misrepresentation by Bryce in a deposition. They consistently maintained that BDL was their legal counsel in connection with the acquisition. Bryce's statement to the contrary may have induced the adversary proceeding to obtain the documents, but it did not induce reliance on the part of the Targets. Count Four will be dismissed.

**IV. Conclusion**

For the reasons set forth in this entry, Defendant's Motion to Dismiss (Docket # 13) is **GRANTED IN PART** and **DENIED IN PART**. Counts One and Two of Plaintiffs' Complaint survive and may be pursued to resolution or judgment. Counts Three and Four are dismissed.

**SO ORDERED** this __7th__ day of September 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

F. Dean Armstrong
ARMSTRONG LAW FIRM
armstronglaw@sbcglobal.net

Claude Ray Bowles Jr.
GREENBAUM DOLL & MCDONALD PLLC
crb@gdm.com

Cynthia M Locke
STEWART & IRWIN, P.C.
clocke@silegal.com

Richard H. Riegner
STEWART & IRWIN P.C.
rriegner@silegal.com