UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

BRONCO HAZELTON CO., HAZELTON )
MINING, LLC, HAZELTON WASH )
PLANT, LLC, and WHITE RIVER COAL, )
INC., )
      Plaintiffs, )
)
  vs. )     3:09-cv-132-RLY-WGH
)
BRYCE DOWNEY & LENKOV LLC, f/k/a )
BRYCE DOWNEY LLC, )
      Defendant. )

**ENTRY ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

On September 7, 2011, this court entered an order granting in part and denying in part the Defendant's Rule 12(b)(6) motion to dismiss. Counts III and IV of the Complaint were dismissed, while Plaintiffs were allowed to continue their prosecution of Counts I & II. Subsequent to that order, the parties have engaged in settlement efforts, but have yet to reach a resolution of the litigation. Before the court now is Plaintiffs' Motion For Leave To File First Amended Complaint (Docket # 37), which amended pleading is a prerequisite to further settlement negotiations, according to Plaintiffs.

Defendant has not denied that its insurance carrier has suggested that an amended pleading is necessary in order to continue further settlement discussions, but it has filed an objection to allowing Plaintiffs to pursue Counts IV and V of their proposed First Amended Complaint, which counts Defendant claims are simply re-labeled versions of

the previously dismissed Counts III and IV of the original Complaint.

**Factual Background**

The four Plaintiffs in this lawsuit consist of three entities which were purchased in 2005, along with the company that purchased them. Hazelton Mining, LLC ("HM"), Hazelton Wash Plant, LLC ("HWP") and White River Coal, Inc. ("WRC")(hereinafter collectively the "Targets") were the entities purchased by Bronco Hazelton Co. ("Bronco"). HM owned the Hazelton Coal Mine in Hazelton, Indiana. WRC operated that coal mine and HWP owned the facility responsible for washing the coal coming from that mine. The ownership of these three companies was split between: Blankenberger Brothers Holdings, LLC; Hoosier King Coal Company; Black Rush Mining LLC; Donald Blankenbeger; David Blankenberger; Patrick Blankenberger and Rick Blankenberger (collectively hereinafter the "Sellers").

In early 2005, the Targets were losing money and having difficulty meeting day to day expenses. At that time, an affiliate of Bronco entered into discussions with a representative of the Targets regarding the possibility of Bronco acquiring the three companies. After those initial discussions, the Defendant in this lawsuit, Bryce, Downey & Lenkov, LLC ("BDL"), began working on the sale of the equity interests in the Targets on behalf of both the Targets and the Sellers. BDL billed HM for its services but the bills were paid by WRC.

On July 1, 2005, Bronco entered into an acquisition agreement with the Targets and Sellers for the purchase of 100% of the equity ownership interests for $25,000,000. The deal closed on December 29, 2005, and, in compliance with the terms of the acquisition agreement, BDL provided an opinion letter to Bronco's Board of Directors confirming, as corporate counsel to each of the three Targets, the validity and authority of each to enter into the transaction and to continue operating its business. Each letter stated: "We have acted as counsel to the Company [HML, HWP, WRC] in connection with the transaction contemplated by the Acquisition Agreement." The letters all stated that Bronco could rely on the opinion letter only with respect to the acquisition transaction.

After the equity sale, Bronco and the Targets continued to have problems paying their bills and debts as they became due. Eventually, Bronco and the Targets filed for bankruptcy under Chapter 11. On May 23, 2008, in connection with litigation related to the bankruptcy, the Targets wrote to BDL, as their former corporate counsel, to arrange for a review of files and a discussion of events related to the acquisition agreement. BDL declined the request, stating in a letter dated May 27, 2008, that it had represented the Sellers and not the Targets in connection with the acquisition. Subsequent similar requests from the Targets continued to be denied. This resulted in the Targets filing an adversary proceeding in bankruptcy court to establish that BDL had acted as their legal counsel and to obtain the documents and information they were seeking from BDL.

In defense of the adversary proceeding, BDL, and specifically Geoffrey Bryce as one of the firm's principals, maintained that despite the language of certain correspondence from the firm and Bryce's own prior sworn testimony in related litigation, Bryce and BDL had always understood that BDL was representing the Sellers and not the Targets in connection with the sale of the Targets. Bryce claimed to have never met with anyone from the Targets other than the Sellers. Nevertheless, the bankruptcy court ruled conclusively that BDL's actions rose to the level of representation of the Targets. That ruling prompted this lawsuit, wherein the Targets and Bronco seek damages from BDL and, in an order dated September 7, 2011, this court expressed its agreement with the bankruptcy court's ruling that BDL had represented the Targets as a matter of law.

**Standard For Allowing Leave To Amend**

Rule 15(a) of the Federal Rules of Civil Procedure directs that leave to amend pleadings "should be freely given when justice so requires." Trial courts should grant leave to amend "unless there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**Discussion**

Count IV of the proposed First Amended Complaint is a claim for constructive fraud brought on behalf of Bronco. It is alleged that, in addition to confirming the validity of the Targets' corporate existence and each company's authority to continue doing business as they were at that time, BDL represented in the opinion letter it provided to Bronco that it had acted as legal counsel to the Targets in connection with the acquisition transaction. According to Plaintiffs, this latter representation was made with reckless disregard for Defendant's actual belief and also failed to disclose that the firm had not actually performed any legal work for the Targets in connection with the transaction.

BDL argues that Count IV is a rehash of Count III in the original Complaint which was dismissed; and, therefore futility would bar its inclusion as part of any amended pleading. Plaintiffs titled Count III of the original complaint as a claim for "Conspiracy To Defraud Bronco." Its primary focus was on the representation in BDL's opinion letter that it had reviewed the books and records of the Target companies and based its opinions, in part, on that review. Count III of the original Complaint alleged that any review of the company books and records would have revealed that the Targets were insolvent, but despite that fact, BDL favored the interests of the Sellers as opposed to the Targets by failing to reveal the insolvency in the opinion letter, thereby better assuring that the $25,000,000 transaction would move forward.

When dismissing Count III in the September 7, 2011, order, this court stated (footnotes omitted):

> First, the opinion letters are not misleading. Plaintiffs offer no authority and the court finds none to support a conclusion that insolvency destroys the legal ability of a company to continue conducting business as it is at that moment. Furthermore, as BDL points out in its reply brief, the letter specifically references that it is issued consistent with the terms of the Accord adopted by the American Bar Association in 1991, which Accord indicates that the letter cannot be relied upon for any legal analysis other than what is specifically included. Whether or not the Targets were solvent was not an opinion offered in the letter and the insolvency exception in the letter and the Accord must be read to prevent any reliance by Bronco on the letter as a hedge against the insolvency of any of the Targets.
>
> Finally, the elements of constructive fraud include the existence of a duty based upon the relationship between the parties and an advantage gained by the party to be charged. *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind.App. 1994). BDL did not gain any advantage here and, most importantly, stood in no type of relationship with Bronco which would establish a duty to do anything other than what it did, which was to provide the opinion letter in conformance with the terms of the acquisition agreement. In short, if Bronco wanted an assurance of the solvency of the companies it should have established terms in the acquisition documents that would have required BDL or, more likely, an accounting firm to provide such assurance. Count Three will be dismissed.

Plaintiffs point out that Count IV in the amended pleading is not based on any misrepresentation regarding the alleged insolvency of the Targets; rather, it is focused on the representation by BDL to Bronco that it had represented the Targets in connection with the transaction when the firm was actually of the opinion that it was not representing the Targets. According to Plaintiffs, Bronco would not have been loaned the funds to complete the deal if it had been known that BDL was not providing legal counsel to the

Targets in connection with the transaction. BDL maintains that this court has already found that BDL owed no duty to Bronco other than to provide its opinion relative to the corporate validity and authority of the three Target companies and, therefore, a constructive fraud claim such as is set forth in Count IV is futile.

The court finds that it would be futile to allow Plaintiffs to include Count IV in their amended pleadings. Included in paragraph 31 of Count III of Plaintiff's original Complaint is the same assertion that Bronco would not have bought the three Target companies at such a high price if BDL had revealed that it did not believe it was actually representing the Targets. However, as the court noted in its September order, for there to be constructive fraud, there must be representations or omissions made in violation of a duty which exists based upon the relationship of the parties. *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind.App. 1994). Here, the only relationship between Bronco and BDL was the one created by the provision in the acquisition agreement that required BDL to provide the opinion letters regarding the corporate authority of each of the Targets to enter into the acquisition agreement. BDL complied with that duty.

Under Indiana law BDL clearly owed much more extensive fiduciary duties to the three Targets.

> The elements of constructive fraud are a duty existing by virtue of the relationship between the parties, representations or omissions made in violation of that duty, and a reliance on the representation or omission by the individuals to whom the duty is owed to the detriment of those individuals. In constructive fraud, the law infers fraud from the relationship

7

of the parties and the circumstances which surround them. This special
relationship is shown when the parties have fiduciary duties to each other,
such as in the relationship between lawyer and client.

*Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125 (Ind.App. 1992) (citations omitted).

The gist behind Count IV of the proposed amended complaint, as it was with Count III of the original, is clearly Bronco's belief that it had a right to expect that BDL did what a good corporate counsel would have done for its clients, the three Targets. No such coattails are provided by the law.[1] BDL's professional and ethical obligations flowed to its clients, not Bronco, and therefore the required element of duty in a constructive fraud claim cannot be established. Where an essential element of the claim sought to be pursued through an amendment cannot be established, the claim is doomed to fail at the summary judgment stage and is, therefore, an exercise in futility. *Wilson v. American Trans Air, Inc.,* 874 F.2d 386, 392 (7th Cir. 1989). Plaintiffs may not amend their complaint to include a claim on behalf of Bronco for constructive fraud.

Proposed Count V asserts a common law claim of deceit. BDL asserts Count V is

---

[1] Plaintiffs' reliance on *Seevers v. Arkenberg*, 726 F.Supp. 1159 (S.D.Ind. 1989), as support for the proposition that it can bring a constructive fraud claim under the circumstances alleged in the proposed amended complaint, is unavailing. As Judge Sarah Evans Barker pointed out in *Seevers*, there was confusion as to whether or not the defendant attorney represented the plaintiff. *Id*. at 1170. In this case, Bronco was unequivocally not BDL's client and any obligation BDL had for forthrightness to Bronco was limited to providing an opinion regarding the Targets' corporate validity and authority to continue doing business and enter into the acquisition transaction.

no different than the claim Plaintiffs made in Count IV of the original complaint for violation of the Indiana Attorney Deceit Statute, Indiana Code § 33-43-1-8, which claim was dismissed. The court dismissed Count IV of the original complaint because the Indiana statute did not provide a separate cause of action and because a common law deceit claim for the damages associated with the purchase of the Targets could not be premised on Bronco's reliance on Geoffrey Bryce's testimony regarding what he and the law firm believed about its representation which was given during litigation that post-dated the acquisition.

Plaintiffs have now pled a common law deceit claim based upon BDL's representation to Bronco that it was acting as corporate counsel to the Targets in connection with the acquisition. It is alleged that BDL purposefully mislead Bronco with respect to whether it was providing legal advice to the Targets in order that Bronco would rely on BDL having actually fulfilled that role. According to Plaintiffs' allegations, this was all with the intent that Bronco complete the acquisition and pay far more for the Targets than any fair value they may have had. The legal elements of a common law deceit claim are: 1) an untrue representation of fact, 2) known to be untrue or recklessly made by the party making it, 3) made for purposes of inducing another party's reliance thereupon, and 4) actual inducement of such reliance to the detriment of that other party. *Connor v. Howe*, 344 F.Supp.2d 1164 (S.D.Ind. 2004). Those elements have been pled and, unlike the constructive fraud claim, a duty premised on the parties' relationship is

9

not a prerequisite to recovery.

The court finds that the factual allegations upon which Plaintiffs' common law deceit claim is founded, as compared to those Plaintiffs maintained supported their dismissed statutory claim, are distinct. That is not to say that reliance will not be an extremely difficult element for Bronco to prove, in light of the fact that the size of the transaction would suggest that it employed its own professionals to assist it in conducting its due diligence and in constructing the deal; nevertheless, that difficulty does not come into play at the pleading stage. Accordingly, the amendment will be allowed and leave is granted for Plaintiffs to file a First Amended Complaint that contains a common law deceit claim.

**Conclusion**

For the reasons explicated in this entry, Plaintiffs' Motion For Leave To File First Amended Complaint (Docket # 37) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are granted leave to file a First Amended Complaint which includes all claims set forth in the proposed pleading attached to their motion, except that no claim for constructive fraud, such as that in Count IV of the proposal may be pled. Plaintiffs have

seven (7) days from entry of this order in which to file their amended pleading.

**SO ORDERED** this 20th day of December 2011.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

F. Dean Armstrong
ARMSTRONG LAW FIRM
armstronglaw@sbcglobal.net

Claude Ray Bowles Jr.
GREENBAUM DOLL & MCDONALD PLLC
crb@gdm.com

Cynthia M Locke
STEWART & IRWIN, P.C.
clocke@silegal.com

Richard H. Riegner
STEWART & IRWIN P.C.
rriegner@silegal.com